UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JARROW FORMULAS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| CENTRE D'EXPERIMENTATION | ) | |
| PYCNOGENOL SARL, | ) | |
| INTERNATIONAL NUTRITION | ) | |
| COMPANY and HORPHAG | ) | |
| RESEARCH LTD. | ) | |
| | ) | |
| Defendants. | ) | March 31, 2004 |

**COMPLAINT**

Plaintiff, Jarrow Formulas, Inc. ("JFI"), by its attorneys, McCarter & English, LLP, for

its complaint against Centre d'Experimentation Pycnogenol Sarl ("CEP"), International Nutrition

Company ("INC") and Horphag Research Ltd. ("Horphag"), alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction as the matter in controversy raises a question under the

Patent Laws of the United States, 35 U.S.C. § 271 et seq.  The specific remedy sought is based

on the laws authorizing an action for declaratory judgment in the Courts of the United States,

28 U.S.C. §§ 2201 and 2202.

2.      Jurisdiction is conferred on this Court under 28 U.S.C. §§ 1331 and 1338(a).

3.      Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1400.

## THE PARTIES

4.      Plaintiff JFI is a corporation organized and existing under the laws of the State of California and having its principal place of business in the City of Los Angeles, California. Plaintiff is doing business within this judicial district.

5.      Defendant INC is a corporation organized and existing under the laws of Liechtenstein and having its principal place of business at Josef Rheinbergerstrasse 6, Vaduz, Liechtenstein.  INC has and is doing business within the United States and this judicial district.

6.      Defendant CEP is a company organized and existing under the laws of France and having an address at 52 Boulevard de Sebastopol, Paris, France.  CEP is doing business within the United States and this judicial district.  On information and belief, CEP is wholly owned by INC.

7.      Defendant Horphag is a company organized and existing under the laws of the United Kingdom and having its registered office at 1 Le Marchant Street, St. Peter's Port, Guernsey, British Channel Islands, United Kingdom.  Horphag is doing business within the United States and this judicial district.

## GENERAL FACTS

8.      Plaintiff JFI is a world leader in the formulation, manufacture and wholesale of a comprehensive line of nutritional supplements.  JFI is presently manufacturing and selling, and since 1995 has manufactured and sold, oligomeric proanthocyanidins ("OPCs") in the United States and abroad.  JFI's products contain OPCs extracted from grape seed, and the labels and/or product literature recommend administration for scavenging free radicals.

9.     At the time that JFI introduced its product containing OPCs to the market, it had been known for more than 25 years that OPCs had beneficial health effects when administered to humans.

10.     On October 6, 1987, U.S. Patent No. 4,698,360 entitled "Plant Extract With a Proanthocyanidin Content as a Therapeutic Agent Having Radical Scavenger Effect and Use Thereof" issued to Masquelier ("the '360 patent")(copy attached as Exhibit A).  The '360 patent claims methods of treating humans by administering proanthocyanidins derived from a plant source to humans.

11.     Proanthocyanidins are defined in the '360 patent at col. 2, lines 7-13 as forming a red pigment (anthocyanidin) by the Bate-Smith reaction.  The Bate-Smith reaction occurs when proanthocyanidins are mixed in solution with a mineral acid and heated.

12.     The '360 patent claims methods of administration of a therapeutically effective amount of proanthocyanidins to humans to reduce or prevent the harmful effects of free radicals in humans.  The '360 patent provides examples of oral administration of therapeutically effective amounts of proanthocyanidins in the range of 100 mg to 200 mg per day.

13.     On April 1, 1969, U.S. Patent No. 3,436,407 entitled "Hydroxyflavan 3,4-diols, a Method of Producing Them and Medicament Based Thereon" issued to Jacques Masquelier ("the '407 patent")(copy attached as Exhibit B).  The '407 patent claims methods for extracting hydroxyflavan 3,4-diols from vegetable materials.

14.     As set forth at col. 2, lines 1-5, the method claimed in the '407 patent results in extraction of hydroxyflavan 3,4 diols in the form of monomers and less polymerized forms (e.g. dimers through pentamers).  As described in the '407 patent at col. 3, lines 35-43, the hydroxyflavan 3,4-diols extracted using the method claimed in the '407 patent produce an

3

intense red color when mixed with warm mineral acid.  Accordingly, the materials extracted by the methods taught and claimed in the '407 patent meet the definition of proanthocyanidins set forth in the '360 patent.

15.     The '407 patent teaches oral administration of the hydroxyflavan 3,4-diols to humans on a daily basis.

16.     On December 22, 1970, U.S. Patent No. 3,549,661 entitled "Method of Manufacturing Chemically Pure Flavanediols" issued to Jacques Masquelier and Jean Michaud ("the '661 patent")(copy attached as Exhibit C).  The '661 patent claims methods for preparation of crystallized flavandiol monomers.  As described in the '661 patent at col. 4, lines 70-74, the product formed using the method of the '661 patent forms an intense current red color when mixed with hydrochloric acid in water and heated, and therefore the product meets the definition of proanthocyanidin in the '360 patent.

17.     The '661 patent describes administering flavandiol monomers to humans orally at dosages of between 5 milligrams and 200 milligrams per day.

18.     On March 6, 1996, INC filed suit in the United States District Court for the District of Connecticut against JFI, Horphag and seventeen other parties claiming infringement of the '360 patent.  On March 18, 2000, summary judgment was entered in favor of JFI, Horphag and all remaining defendants in the action because INC did not have any ownership interest in the '360 patent at the time it had filed suit.

19.     On information and belief, on or about April 24, 2003, Horphag and CEP entered into an agreement whereby CEP and Horphag each own an undivided 50% interest in the '360 patent.  The agreement further requires each party to join in any lawsuit brought to enforce the '360 patent.

4

20.      Since purportedly acquiring an ownership interest in the '360 patent, INC and CEP have communicated to JFI that they intend to bring a new action against JFI for infringement of the '360 patent.

21.      Based upon the actions undertaken by INC and CEP, an actual controversy exists between JFI, CEP and Horphag as to whether JFI's line of OPCs violate any valid and enforceable rights of CEP and Horphag based on the '360 patent.

22.      Based upon actions undertaken by INC and CEP, JFI is under a reasonable apprehension that CEP and Horphag will seek to enforce their alleged rights in the '360 patent against JFI or its customers.

### COUNT I (Patent Invalidity Under 35 U.S.C. § 102)

23.      Paragraphs 1-22 are repeated and realleged as though fully set forth herein.

24.      Beginning in approximately 1978, a product containing proanthocyanidins was made and sold in France under the trade name Endotelon.  Endotelon was a product comprised of proanthocyanidins extracted from grapes.  Endotelon was produced under a license from Societe Civile d'Investigations Pharmaceutiques d'Aquitaine (SCIPA), a French partnership in which Masquelier was a partner.

25.      In 1980, an article was published in the *Gazette Medicale de France* entitled "Therapeutical Trial of Endotelon, a peripheral angioprotector" reporting the results of tests performed by administering Endotelon to humans at a dosage of 150 milligrams per day ("the French Endotelon article").  Copies of the French article and an English translation of the article are attached as Exhibit D.

26.     The French Endotelon article describes administration of proanthocyanidins obtained from a plant source to humans in the same dosage range described and claimed in the '360 patent.

27.     Administering the proanthocyanidins in Endotelon in the dosage range described in the '360 patent inherently and necessarily results in scavenging of free radicals in humans. Therefore, the '360 patent improperly claims only a result of administration of proanthocyanidins in the manner described in the prior art.  The French Endotelon article describes, explicitly or inherently, each and every step of the methods claimed in the '360 patent.

28.     In addition to the French Endotelon article, there are other references published prior to 1984 which describe administration to humans of proanthocyanidins derived from plant sources at dosages within the range claimed in the '360 patent.

29.     For example, in the book OPC in Practice published in 1993 by Bert Schwitters (at the time a Director of INC) in collaboration with Jack Masquelier, several studies of "the OPC-based product 'Endotelon' (Sanofi/Labaz)" are summarized at pages 57-61.  Copies of these pages are attached as Exhibit E.

30.     In the studies described in Exhibit E, which took place 1980 and 1981, Endotelon was administered to human subjects at dosages within the dosage ranges claimed in the '360 patent.

31.     In the 3rd edition of OPC in Practice published in 1995, at pages 111-117, additional information regarding testing of Endotelon in 1980 and 1981 is provided, including citations to references describing in detail the tests previously summarized in the 1993 edition of the book.  Copies of pages 111-117 of the 3rd edition of OPC in Practice are attached as Exhibit F.

32.     Upon information and belief, INC offers for sale in the United States an OPC product under the trade name Flavay™.  A photograph of a bottle of Flavay™ offered through a distributor is shown in Exhibit G.  The label on the bottle of Flavay™ shown in Exhibit G includes the Masqulier's® trademark owned by INC, includes the '360 patent number, and further states "Scientifically Defined, Patented and isolated from Natural Extracts as used in the Actual Research Since 1947."

33.     Product literature regarding Flavay™ is attached as Exhibit H.  As shown in the underlined passages in Exhibit H, the product literature states that Flavay™ "is proven fully bioavailable, safe and effective by numerous human studies, manufactured in France and used worldwide since 1950."

34.     The product literature for Flavay™ further states that Resivit™, Flavan™ and Endotelon™ are the early French brand names for Flavay™.  Upon information and belief Flavan™ was introduced into the French market in 1968.

35.     Endotelon™ is an OPC product manufactured from grape seeds which was introduced in France in 1978.

36.     The '360 patent is invalid for failing to satisfy the criteria for patentability under 35 U.S.C. § 102 in view of the prior art describing administration of proanthocyanidins to humans within the ranges claimed in the '360 patent, including without limitation the French Endotelon article, the references cited in OPC in Practice and the literature regarding the French counterparts to Flavay™.

**COUNT II (Patent Invalidity Under 35 U.S.C. § 103)**

37.     Paragraphs 1-36 are repeated and realleged as though fully set forth herein.

7

38.    The '360 patent is invalid under 35 U.S.C. § 103 because the differences between the subject matter claimed in the '360 patent and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.

### COUNT III (Patent Unenforceability)

39.    Paragraphs 1-38 are repeated and realleged as though fully set forth herein.

40.    The patent application which issued as the '360 patent was filed by the applicant, Masquelier, on April 9, 1985.

41.    Upon information and belief, at the time that the '360 patent application was filed, Masquelier knew of the published literature regarding administration of proanthocyanidins to humans, including without limitation the French Endotelon article and the 1980 and 1981 articles cited at pages 111-117 of the 3rd edition of OPC in Practice.

42.    During prosecution of the '360 patent, the applicant, and/or those associated with the filing and prosecution of the patent application, committed inequitable conduct or fraud by failing to bring to the attention of the U.S. Patent & Trademark Office prior art that was material to patentability, including without limitation the French Endotelon article and the 1980 and 1981 articles cited at pages 111-117 of the 3rd edition of OPC in Practice.

43.    On April 17, 1996, a Request for Reexamination of the '360 patent was filed with the U.S. Patent and Trademark Office.  On August 26, 1997, a Notice of Intent to Issue Reexamination Certificate was issued by the U.S. Patent & Trademark Office.

44.    During prosecution of the reexamination of the '360 patent, Masquelier and/or those associated with prosecution of the '360 patent submitted an Information Disclosure Statement citing seventy-one separate references without any explanation of any of the

8

references other than the titles and dates of the references.  A copy of the Information Disclosure Statement is provided as Exhibit I.

45.     Masquelier and/or those associated with prosecution of the '360 patent did not cite in the Information Disclosure Statement or otherwise provide the Examiner with the French Endotelon article, the 3rd edition of OPC in Practice, or any of the articles regarding testing of OPCs cited at pages 111-117 of the 3rd edition of OPC in Practice.

46.     Masquelier and/or those associated with prosecution of the '360 patent made misleading statements to the Examiner during prosecution of the '360 reexamination, including without limitation the following statement in the Office Action response dated March 17, 1997 attached as Exhibit J:

> Patentee respectfully points out that the Examiner's use of OPC In Practice as a secondary reference in the 35 U.S.C. §§102/103 rejection of the claims is improper.  OPC In Practice was published in 1993, which is long subsequent to the April 9, 1985 filing date of the '360 patent.  Therefore, OPC In Practice is not a proper basis for the Examiner to establish a 35 U.S.C. §§102/103 rejection. . .

47.     The statement in the March 17, 1997 Office Action response was misleading at least because Masquelier and/or those associated with prosecution of the reexamination of the '360 patent knew that OPC In Practice included information regarding tests of Endotelon conducted in 1980 and 1981 within the dosage ranges claimed in the '360 patent, and Masquelier and/or those associated with prosecution of the reexamination of the '360 patent failed to provide this information to the Examiner.

48.     During prosecution of the reexamination of the '360 patent, Masquelier and/or those associated with the prosecution of the reexamination, committed inequitable conduct or fraud at least by failing to bring to the attention of the U.S. Patent & Trademark Office prior art

that was material to patentability, including without limitation the French Endotelon article and the articles cited at p ages 111-117 in the 3rd edition of OPC In Practice.

49.      As a result of the inequitable conduct committed by Masquelier and/or those associated with the filing and prosecution of the '360 patent application and the '360 reexamination, the '360 patent is unenforceable.

## COUNT IV (Patent Misuse)

50.      Paragraphs 1-49 are repeated and realleged as though fully set forth herein.

51.      By virtue of the foregoing acts of harassment and threats of further patent infringement suits made by INC and CEP when INC and CEP have known, or should have known, that the '360 patent is unenforceable and/or invalid, INC and CEP have committed acts of patent misuse.

52.      As a result of INC's and CEP's acts of patent misuse, the '360 patent is unenforceable.

## Prayer for Relief

WHEREFORE, Plaintiff, JFI, demands judgment in its favor and against Defendants CEP, INC and Horphag as follows:

1.      . that a declaratory judgment be entered that United States Patent No. 4,698,360 is unenforceable and invalid;

2.      that JFI be awarded temporary and permanent injunctive relief preventing CEP, INC and Horphag from threatening or bringing suit against JFI and its customers under the '360 patent;

3.      that costs and reasonable attorneys' fees be awarded JFI in connection with this action pursuant to 35 U.S.C. § 285; and

4.     such other and further relief as this Court may find just and proper.

                                    THE PLAINTIFF,
                                    JARROW FORMULAS, INC.
                                    BY McCARTER & ENGLISH, LLP
                                    ITS ATTORNEYS


                            By     _E. C. Grondahl_
                                    ERIC WATT WIECHMANN (CT 04331)
                                    MARK D. GIARRATANA (CT 10401)
                                    ERIC E. GRONDAHL (CT 08988)
                                    CityPlace I
                                    185 Asylum Street
                                    Hartford, CT  06103
                                    (860) 275-6700
                                    (860) 724-3397 (fax)


HARTFORD: 601387.01
97728-00024