```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT

JARROW FORMULAS, INC.,          :
     Plaintiff,                 :
                                :
vs.                             :
                                :     Civil No. 3:04CV535(AVC)
CENTRE D'EXPERIMENTATION        :
PYCNOGENOL SARL, ET AL.         :
     Defendants.                :
```

**RULING ON THE DEFENDANTS',
HORPHAG RESEARCH LTD. and INTERNATIONAL NUTRITION COMPANY'S
MOTIONS TO DISMISS**

This is an action for a declaratory judgment brought pursuant to 35 U.S.C. § 271.  It arises out of Jarrow Formulas, Inc.'s ("Jarrow") alleged infringement of United States Patent No. 4,698,360 ("'360 patent").

The defendants, International Nutrition Company ("INC") and Horphag Research Ltd. ("Horphag") and have filed the within motions (document nos.45,49) to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(1).

In INC's motion to dismiss (document no.45), INC argues, inter alia: (1)  the court lacks subject matter jurisdiction over the action against INC because Jarrow "could not possibly have a reasonable apprehension that INC will initiate" a patent infringement action against INC, and (2) the court lacks personal jurisdiction over INC under the Connecticut long arm statute.

Jarrow responds, inter alia: (1) the court has subject matter over the action against INC "[d]ue to INC's threatened

litigation and INC's initiating the litigation previously against" Jarrow; and (2) the court has personal jurisdiction over INC because "INC has consented to personal jurisdiction of this Court . . ."

In Horphag's motion to dismiss (document no.49), Horphag argues that the court should "dismiss the complaint against [Horphag] for lack of personal jurisdiction over Horphag in Connecticut and lack of subject matter jurisdiction over this declaratory judgment action."

Jarrow responds: (1) the court has subject matter jurisdiction over the action against Horphag because "in the settlement agreement over ownership of the '360 patent, Horphag agreed to cooperate and join any litigation with respect to enforcement of the '360 patent"; and (2) the court has personal jurisdiction over Horphag because "Horphag has consented to be joined in any action involving CEP and the '360 patent".

The issues presented are: (1) whether there is a reasonable apprehension on the part of Jarrow that it will face an infringement action by INC; (2) whether the court has personal jurisdiction over INC; (3) whether there is an a reasonable apprehension on the part of Jarrow that it will face an infringement action by Horphag; and (4) whether the court has personal jurisdiction over Horphag.

The court concludes: (1) Jarrow cannot have a reasonable apprehension that INC will bring a patent infringement action against Jarrow and therefore there is no subject matter jurisdiction over the action with regard to INC; (2) the court need not address whether it has personal jurisdiction over INC; (3) Jarrow cannot have a reasonable apprehension that Horphag will bring a patent infringement action against Jarrow and therefore there is no subject matter jurisdiction over the action with regard to Horphag; and (4) the court need not address the issue of whether it has personal jurisdiction over Horphag.

**FACTS**

Examination of the complaint, the memoranda in support of it motions to dismiss, the plaintiff's oppositions, and the documents accompanying the motions and oppositions discloses the following undisputed facts:

The plaintiff, Jarrow Formulas, Inc. ("Jarrow"), is a corporation organized under the laws of the State of California with its principal place of business in Los Angeles, California. Jarrow formulates, manufactures, and sells nutritional supplements.

Since 1995, Jarrow has manufactured and sold oligomeric proanthocynanidins ("OPCs") in the United States and abroad. OPCs are an extract from grape seed that are known to have

beneficial effects on humans by scavenging free radicals in the body.

Jarrow has brought this action against, inter alia, three foreign defendants: Centre d'Experimentation Pycnogenol Sarl ("CEP"), International Nutrition Company Establishment ("INC") and Horphag Research Ltd. ("Horphag").

CEP is a company organized and existing under the laws of France.  INC is a company organized and existing under the laws of Liechtenstein.  One Egbert Schwitters is the owner of INC and also the sole director of CEP.

Horphag is a company organized under the laws of Guernsy, British Channel Islands, United Kingdom.

On October 6, 1987, the United States Patent and Trademark Office issued the '360 patent for "Plant Extract With a Proanthocyanidin Content as a Therapeutic Agent Having Radical Scavenger Effect and Use Thereof" to one Jack Masquelier.

Masquelier assigned the '360 patent to Societe Civile Pharmacologiques D'Aquitaine ("SCIPA"), a company formed by Masquelier, and Horphag Overseas, Ltd., the predecessor-in-interest of Horphag.

In 1994, SCIPA attempted to assign its one-half interest in the '360 patent to INC.

4

In October 1995, after learning of SCIPA's purported assignment of its interest to INC, Horphag brought an action against INC and other companies in France.  Specifically, Horphag argued that it had complete ownership of the '360 patent as a result of SCIPA's improper assignment of its ownership interest in the '360 patent to INC.

On March 6, 1996, while Horphag's suit was pending in France, INC brought a patent infringement action concerning the '360 patent against, inter alia, Jarrow and Horphag in the United States District Court for the District of Connecticut ("1996 patent infringement action").  <u>International Nutrition Co., Inc. v. Horphag Research, Ltd. et al.</u>, Civil Action No. 3:96 CV 00386 (DJS).

On March 25, 1997, the French Court of Primary General Jurisdiction of Bordeaux concluded that SCIPA's assignment of its interest in the '360 patent to INC was void.  On May 28, 1998, the Bordeaux Court of Appeals affirmed.  The French courts concluded that INC did not have any ownership rights to the patent.  Rather, the French courts concluded that Horphag and SCIPA retained co-ownership of the '360 patent.

On June 3, 1998, Schwitters merged SCIPA with CEP, and CEP succeeded to SCIPA's interest in the '360 patent.

5

On March 18, 2000, the Connecticut district court granted summary judgment in favor of Jarrow, Horphag and all other defendants in INC's 1996 patent infringement action. Specifically, the court granted comity to the French court's conclusion that INC had no ownership interest in the '360 patent. The court therefore concluded that INC did not have standing to bring the patent infringement action.

INC then filed a motion to amend with the Connecticut district court, seeking to add CEP as a party to the 1996 patent infringement action.  The court denied INC's motion and entered judgment in favor of the defendants, including Horphag and Jarrow.

On February 2, 2001, the French Tribunal de Commerce de Grasse cancelled the merger between CEP and SCIPA, concluded that INC's exploitation of the '360 patent was fraudulent, and enjoined INC and CEP from continued exploitation of the '360 patent.

On March 23, 2001, Jarrow filed an antitrust action against INC in the United States District Court for the District of Connecticut. See Jarrow Formulas, Inc. v. International Nutrition Co. et al., 175 F. Supp. 2d 296 (D. Conn. 2001).  In that ongoing antitrust action, Jarrow alleges that INC engaged in anti-

competitive conduct to monopolize the market for products which the '360 patent covered.

On July 16, 2001, the Court of Appeals for the Federal Circuit affirmed the Connecticut district court's ruling in favor of Jarrow and Horphag.  International Nutrition Co., Inc. v. Horphag Research Ltd. et al, 257 F.3d 1324, 1331 (Fed.Cir. 2001).

In late June 2003, Horphag and CEP entered into a "Patent Ownership Confirmatory Agreement" ("confirmatory agreement"). The confirmatory agreement provided that its purpose was to "normalize" Horphag and CEP's "relationship and clarify their respective ownership interests in" the '360 patent and to "enable the effective enforcement thereof in the United States."

Specifically, the confirmatory agreement provided: (1) Horphag "is the owner of an undivided one-half (50%) right, title and interest in and to" the '360 patent; (2) "as a result of the merger between CEP and SCIPA . . . CEP is the current owner of an undivided one-half (50%) right, title and interest in and to" the '360 patent; and (3) Horphag and CEP "shall cooperate in, and join if necessary, litigation with respect to the validity, infringement or enforcement of" the '360 patent. See Document no. 54-9, Exhibit 13.

On June 20, 2003, the French Aix en Provence Court of Appeal dismissed Horphag's action against CEP based on CEP's attempted merger with SCIPA.  Specifically, the French court noted that Horphag had requested the action's withdrawal because Horphag and CEP had come to an agreement regarding the '360 patent.

On September 4, 2003, INC's counsel faxed a letter to Jarrow's counsel.  Specifically, the letter stated that it "may be productive for the parties to discuss settlement . . ."  Furthermore, the letter stated, "[i]n light of recent developments, INC and CEP are considering resuming action to enforce the '360 patent against infringers, including Jarrow . . . ." See Document no.54-10, Exhibit 14.

The letter also stated that "INC and CEP have settled all disputes with Horphag, which is now obligated to join any action to enforce the patent against infringers."  Furthermore, the letter went on to state that because

> Horphag is [now] required to join any infringement action, our clients have the ability to establish standing by joining as plaintiffs in the same action all the parties owning any interest in the patent . . . . Now that the standing issue has been cured, INC naturally desires to obtain vindication of its original action, punishment for the infringers, disgorgement by the infringers of their illegally obtained profits, and prevention of further infringement.  Before it files a new infringement action, however, it would like to explore the possibility of settling all claims between the parties . . . .

On March 31, 2004, approximately seven months later, Jarrow filed the within action for declaratory relief to determine the validity and enforceability of the '360 patent. Jarrow stated in its complaint that "[b]ased on actions taken by INC and CEP, [Jarrow] is under a reasonable apprehension that CEP and Horphag will seek to enforce their alleged rights in the '360 patent against [Jarrow] or its customers."

On November 9, 2004, the court allowed jurisdictional discovery and ordered that it conclude by January 12, 2005.

On November 11, 2004, Schwitters signed an affidavit in which he stated that "INC presently makes no claim to own [the '360 patent] and has no intentions of enforcing that patent against Jarrow . . ." See Document no.46-10.

On April 9, 2005, the '360 patent expired.

On April 12, 2005, CEP filed a statement with the court in which it promised, inter alia, that it "will not sue [Jarrow] . . . for infringement of the '360 patent." See Document no.64.

On May 18, 2005, the court issued an order dismissing the action against CEP. See Document no.69.  Specifically, the court concluded that because CEP had filed the statement promising "not to sue" Jarrow "for infringement of the '360 patent", Jarrow lacked "the requisite reasonable apprehension" that CEP would sue Jarrow for infringement of the '360 patent.

9

**STANDARD**

A court must grant a motion to dismiss brought pursuant to Fed. R. Civ. P. Rule 12(b)(1) where a plaintiff has failed to establish subject matter jurisdiction.  Golden Hill Paugussett Tribe of Indians v. Weicker, 839 F. Supp. 130, 136 (D. Conn. 1993).  In analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the court must accept as true and must draw inferences in favor of the plaintiff, here Jarrow. Capitol Leasing Co. v. F.D.I.C., 999 F.2d 188, 191 (7th Cir. 1993). Where a defendant challenges subject matter jurisdiction, the court may resolve disputed issues of jurisdictional fact by referring to evidence outside the pleadings, such as affidavits. Antares Aircraft, L.P. v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991).

**DISCUSSION**

**I.   INC's Motion to Dismiss**

   **A.   Subject Matter Jurisdiction**

INC first argues that the court lacks subject matter jurisdiction over Jarrow's declaratory judgment action against INC because there is no actionable controversy between Jarrow and INC.  INC asserts, inter alia, that Jarrow cannot have a reasonable apprehension that INC will bring a patent infringement action against Jarrow.  Specifically, INC argues "INC simply

cannot sue Jarrow, even if it wished to do so" because INC admits that it "has no standing to do so, as it has been judicially determined that INC has no rights to the '360 patent". Furthermore, INC emphasizes that it has "not sued Jarrow in the year and a half since the referenced letter" from INC's counsel to Jarrow.  Finally, Jarrow has submitted a November 11, 2004 affidavit from Schwitters, INC's owner, stating that "INC presently makes no claim to own [the '360 patent] and has no intentions of enforcing that patent against Jarrow . . ."

Jarrow responds that it does have a reasonable apprehension that INC will initiate a patent infringement action against Jarrow and that this apprehension provides the court with subject matter jurisdiction over the instant action.  Specifically, Jarrow argues that September 4, 2003 "letter from counsel for INC threatening to 'reinstitute' a suit against" Jarrow "particularly when viewed in the context of the prior litigation against [Jarrow], is sufficient to" create a reasonable apprehension of patent infringement litigation on the part of Jarrow and thus provide the court with subject matter jurisdiction.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in pertinent part:

> In a case of *actual controversy* within its jurisdiction
> . . . any court of the United States, upon the filing
> of an appropriate pleading, may declare the rights and

11

>    other legal relations of any interested party seeking
>    such declaration, whether or not further relief is or
>    could be sought.

28 U.S.C. § 2201(a)(emphasis added).  An "actual controversy between the parties" must exist before a "federal court may exercise jurisdiction over an action for a declaratory judgment." Teva Pharm. USA, Inc. v. Pfizer, Inc. 395 F.3d 1324, 1331-32 (Fed.Cir. 2005)(quoting EMC Corp. v. Norand Corp., 89 F.3d 807, 810 (Fed.Cir. 1996)).

The Federal Circuit Court of Appeals has held that in the context of patent declaratory judgment actions, an "actual controversy" only exists if the plaintiff meets the requirements of a two-part test.  The plaintiff must show:

>    (1) an explicit threat or other action by the patentee,
>    which creates a reasonable apprehension on the part of
>    the declaratory plaintiff that it will face an
>    infringement suit, and (2) present activity which could
>    constitute infringement or concrete steps taken with the
>    intent to conduct such activity.

BP Chems., Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed.Cir. 1993). See also Teva Pharm. USA, Inc. v. Pfizer, Inc. 395 F.3d 1324, 1331 (Fed.Cir. 2005).

The "purpose of the two-part test is to determine whether the need for judicial action is real and immediate," in which case the federal courts have jurisdiction, or whether it is a "prospective and uncertain occurrence," in which case the federal

courts do not have jurisdiction. BP Chems., Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed.Cir. 1993).

As to the first part of the two-part test, the Federal Circuit has held that where a "defendant's conduct, including its statements falls short of an express" threat of patent infringement litigation, a court "must consider the totality of the circumstances in determining whether that conduct" amounts to conduct which "creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit." Teva Pharm. USA, Inc. v. Pfizer, Inc. 395 F.3d 1324, 1333, 1331 (Fed.Cir. 2005)(internal quotation marks and citations omitted). Here, Jarrow does not allege that the defendants' conduct amounted to an express threat of a patent infringement action. Accordingly, the court must evaluate the reasonableness of Jarrow's apprehension under the totality of the circumstances. "The reasonableness of a party's apprehension is judged using an objective standard." Vanguard Research, Inc. v. Peat, Inc., 304 F.3d 1249, 1254- 55(Fed.Cir. 2002).

Moreover, a plaintiff seeking a declaratory judgment has the burden "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the complaint was filed." Sierra Applied Sci., Inc. v. Advanced Energy Indus., Inc., 363 F.3d 1361, 1373 (Fed.Cir. 2004)(quoting

13

Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc., 787 F.2d 572, 575 (Fed.Cir. 1986)).

A defendant may divest a court of subject matter jurisdiction over a declaratory judgment action by removing any reasonable apprehension that it will bring a patent infringement action against the plaintiff.  A defendant may, for example, file a "covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present or future acts . . ." Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed.Cir. 1995).  A defendant, however, need not go so far as to file such a covenant with the court. Id. at 1058.  For example, "a promise not to bring a suit" may be "sufficient to remove reasonable apprehension of suit." Gillette Co. v. Optiva Corp., 2000 WL 30738, at *6 (S.D.N.Y. March 23, 2000).  The court must evaluate whether the defendant's actions remove any reasonable apprehension, again, in light of the totality of the circumstances. Vanguard Research, Inc. v. PEAT, Inc., 304 F.3d 1249, 1254-56 (Fed.Cir. 2004).

In Super Sack Mfg. Corp v. Chase Packaging Corp., 57 F.3d 1054, 1056 (Fed.Cir. 1995), the Federal Circuit Court of Appeals held that a defendant in a patent declaratory judgment action had removed any reasonable apprehension of a patent infringement action through the "statement of [its] counsel in motion papers

14

and briefs rather than a covenant signed by [the party] itself and filed with the court." Id. See also Sierra Applied Sci., Inc. v. Advanced Energy Indus., Inc., 363 F.3d 1361, 1375 (Fed.Cir. 2004)(concluding an actual controversy no longer existed because the defendant's attorneys' "statements at the district court and at our court are sufficient to create an estoppel against [the declaratory plaintiff] with regard to suing").

Similarly, here the court concludes that the statements of INC's counsel in its motion papers and memoranda to the court remove any reasonable apprehension on the part of Jarrow that INC will bring a patent infringement action against Jarrow. Specifically, INC has stated that it "simply cannot sue Jarrow, even if it wished to do so" because INC admits that it "has no standing to do so, as it has been judicially determined that INC has no rights to the '360 patent". In addition, Jarrow has submitted a November 11, 2004 affidavit from Schwitters, INC's owner, stating that "INC presently makes no claim to own [the '360 patent] and has no intentions of enforcing that patent against Jarrow . . ." The court concludes that in light of the statements of INC's counsel and Schwitters's affidavit, Jarrow cannot reasonably apprehend that Jarrow will bring a patent

infringement action against INC.  Accordingly, the court lacks subject matter jurisdiction over the action against INC.

    **B.**   **Personal Jurisdiction**

Because the court has concluded that it lacks subject matter jurisdiction over Jarrow's action against INC, Jarrow's action against INC will be dismissed.  Accordingly, the court need not address INC's arguments that the court lacks personal jurisdiction over INC.

**II.  Horphag's Motion to Dismiss**

  **A.**   **Subject Matter Jurisdiction**

Horphag similarly argues that Jarrow cannot have a reasonable apprehension that Horphag will bring a patent infringement action against Jarrow and that the court therefore lacks subject matter jurisdiction as to Horphag.  Specifically, Horphag argues that this court lacks subject matter jurisdiction over this action because Horphag "has not made any threats of patent infringement litigation against Jarrow" and "Jarrow conceded that Horphag has not accused Jarrow of infringing the '360 Patent."

Jarrow first responds that "[a]lthough Horphag has not itself threatened suit against [Jarrow]" the court nonetheless has subject matter jurisdiction as to Horphag because the court may impute to Horphag the statement's by INC and CEP's counsel.

16

Specifically, Jarrow argues that in the 2003 confirmatory agreement, Horphag agreed with CEP "to cooperate and join any litigation with respect to enforcement of the '360 patent." Jarrow also argues that "because Horphag has an ownership interest in the '360 patent, Horphag is a necessary party to his declaratory judgment action . . . ."

The court concludes that based on the law articulated above and its earlier conclusions that Jarrow cannot have a reasonable apprehension that either INC or CEP will sue Jarrow on the '360 patent, Jarrow can not have a reasonable apprehension that Horphag will bring a patent infringement action against Jarrow.

Jarrow acknowledges "Horphag has not itself threatened" to sue Jarrow on the '360 patent.  Rather, Jarrow's allegations are limited to the actions of INC and CEP.  Jarrow bases its primary argument that the court has subject matter jurisdiction over the action against Horphag on Horphag's 2003 agreement with CEP to "cooperate in, and join if necessary, litigation with respect to the validity, infringement or enforcement of" the '360 patent.

On May 18, 2005, however, the court issued an order dismissing the action against CEP (document no.69) based on the court's conclusion that Jarrow "lacks the requisite reasonable apprehension" that CEP would sue Jarrow on the '360 patent. Specifically, the court based its ruling on CEP's filing of a

statement promising, inter alia, "not to sue" Jarrow "for infringement of the '360 patent." Similarly, the court has concluded above that Jarrow lacks a reasonable apprehension that INC will sue Jarrow on the '360 patent. Because the court has concluded that there can be no reasonable apprehension that either CEP or INC will sue Jarrow with respect to the '360 patent, the court concludes that there can be no reasonable apprehension that the 2003 agreement will obligate Horphag to join such action against Jarrow. Accordingly, the court does not have subject matter jurisdiction over the action against Horphag.

**B.  Personal Jurisdiction**

Because the court has concluded that it lacks subject matter jurisdiction over Jarrow's claims against Horphag, the court need not address Horphag's argument that the court also lacks personal jurisdiction over Horphag.

## CONCLUSION

For the reasons set forth above, the court concludes that Jarrow cannot have a reasonable apprehension that either INC or Horphag will bring an action against Jarrow with regard to the '360 patent.  Accordingly, there is no actionable controversy on which Jarrow can base a declaratory judgment action against either INC or Horphag.  The court therefore lacks subject matter jurisdiction over Jarrow's action against INC and Horphag.

Accordingly, INC's motion to dismiss (document no.45) is GRANTED.  Similarly, Horphag's motion to dismiss (document no.49) is GRANTED.

It is so ordered this _30th__ day of August, 2005 at Hartford, Connecticut.

_____/s/_____

Alfred V. Covello
United States District Judge